## THE UNITED STATES v. VOWELL AND M'CLEAN.

---

Duties upon goods import-ed, do not ac-crue until their arrival at the port of entry. The duty up-on salt, which ceased with the 31st of Decem-ber, 1807, was not chargeable upon a cargo which arrived within the col-lection district before that day, but did not ar-rive at the port of entry until the 1st of Ja-nuary, 1808.

ERROR to the circuit court of the United States, for the district of Columbia, in an action of debt upon a bond given by the defendants in error to the United States, for duties on a cargo of *salt* from St. Ubes, which arrived and came to anchor within the collection district of Alexandria, *sixteen miles below the town and port of Alexandria,* on the 23d of De-*cember,* 1807, but did not arrive at the *port* of Alexandria until the *first of January,* 1808.

The collector of Alexandria refused to permit the cargo to be landed until the duties were secured. Vowell contended that the salt was not subject to duty.

The facts being specially pleaded, and admitted in the replication, to which there was a general de-murrer, the only question was, whether, as the duty upon salt ceased with the 31st of December, 1807, this cargo, which arrived within the *district,* but not

*at the port* of Alexandria before the 1st of January, 1808, was liable to duty.

The court below was of opinion that it was not, and rendered judgment for the defendants, upon the demurrer.

The United States brought their writ of error.

*Jones*, for the United States.

The duty attached when the salt was imported into the district, and, perhaps, when brought into the United States.

By the act of the 10th of August, 1790, *vol.* 1. *p.* 248. a duty of 12 cents a bushel is laid upon salt which, after the 31st of December then next, should be " *brought into the United States*, from any foreign port or place." So by the act of the *8th July*, 1797, *vol.* 4. *p.* 35. an additional duty of 8 cents is laid upon all salt *imported into the United States.* By the act of March 3, 1807, *vol.* 8. *p.* 290. it is enacted, " that from and after the 31st day of December next, so much of any act as lays a duty upon imported salt, be and the same is hereby repealed; and from and after the day last aforesaid, salt shall be imported into the United States free of duty: Provided that for the recovery and receipt of such duties as shall have accrued, and on the days aforesaid respectively remain outstanding, and for the recovery and distribution of fines, penalties and forfeitures, and the remission thereof, which shall have been incurred before and on the said days respectively, the provisions of the aforesaid act shall remain in full force and virtue."

The laws of the United States take a distinction between *importing* and *entering*, between a *port* and a *place*. *Vol.* 4. *p.* 317. § 23. and 24. Goods may be imported before they are entered or delivered. So if goods are brought in and destined to be delivered in different districts or ports, they are to be inserted

in the manifest in successive order, and the law speaks of them as *imported*. The forfeiture for want of a manifest does not accrue at the time of *entry*, but at the time of *importing* or *bringing in*. So if goods are brought into the United States, to be exported again to foreign ports, the law speaks of them as *imported*, (*vol.* 4. *p.* 331, 332. § 32.) although they are not intended to be landed.

In *vol.* 4. *p.* 327. § 30. is the following expression : "at any *port* of the United States established by law, or within any *harbour*, *inlet* or *creek thereof*;" which shows that a *port* established by law, is coextensive with a collection district.

*C. Lee*, contra.

Until the vessel arrives at the port of entry, neither the duties on the goods, nor on the tonnage, accrue. Yet they both accrue at the same time.

The question is, what is the fiscal meaning of the word imported.

The first collection law, which was passed on the 4th of July, 1789, (*Child's edit. Laws*, *vol.* 1. *p.* 25.) has the same expression, imported into the United States. Yet it afterwards speaks of the *time* of importation, where it evidently means the time when a permit is applied for at the proper office. Some rule is necessary by which to fix the time of importation; it ought not to depend upon the question at what time the vessel arrived within the jurisdiction of the United States. The same act, when speaking of the *ad valorem* duties, refers to the *time and place* of importation, for the purpose of ascertaining the value.

If goods should be lost after arrival within the collection district, but before they reached the *port of entry*, no duties would accrue upon them. So if they are damaged, the value is to be ascertained not

at their arrival within the district, but at the port of entry.

The second collection law, *vol.* 1. *p.* 248. (*Folwell's edition,*) does not repeal the first, except so far as it is repugnant thereto, but is explained by it.

The duty on tonnage does not accrue until the arrival at the port of entry.

In the act of May 2, 1792, *vol.* 2. *p.* 68. the duties therein mentioned are to be " laid, levied and, collected upon the said articles *at their importation into the United States.*"

The acts of congress take a clear distinction between a district and a port. A district may contain several ports. *Vol.* 1. *p.* 162.

The case of a vessel detained by ice, is the only case in which an entry of a vessel within the district can be made before her arrival at the port of entry.

By the collection act, in *vol.* 1. *p.* 175. the district of Alexandria is created, and a collector is to reside at *Alexandria,* which is made the sole port of entry; " and the authority of the officers of the said district shall extend over all the waters, shores, bays, harbours and inlets, on the south side of the river Potomack from the last-mentioned *cockpit point* to the highest tide water of the said river."

If *district* meant *port,* a vessel must enter within 48 hours after arrival within the district, or the vessel and cargo will be liable to forfeiture.

Six months' credit is given for duties from the time of importation. The uniform construction of the treasury has been that this six months begins from the time of entry and permit. In this very case the bond is dated on the 2d of January, 1808, the date of the permit.

THE U. S.
v.
VOWELL.

In all cases too where additional duties have been imposed, the construction of the treasury has always been, that the additional duties are to be paid if the vessel arrived at the *port* after the day fixed by law, although she arrived within the *district* before that day.

*March* 15.

MARSHALL, Ch. J. delivered the opinion of the court to the following effect:

The distinction taken by the counsel for the defendants in error, between a district and a port of entry, is correct. The duties did not accrue in the fiscal sense of the term, until the vessel arrived at the port of entry. If the question had been doubtful, the court would have respected the uniform construction which it is understood has been given by the treasury department of the United States upon similar questions. It is understood that in case of an increase of duty, the United States have always demanded and received the additional duty if the goods have not arrived at the *port of entry* before the time fixed for the commencement of such additional duty, although the vessel may have arrived within the collection district before that time. The same rule of construction is to be observed when there is a diminution of duty.

Judgment affirmed.